# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**REBECCA HARREL,**

    *Plaintiff*,

**v.**                                       **Case No.: 4:25cv258-MW/MAF**

**TASSELS, INC., et al.**

    *Defendants.*

---

### DEFENDANTS' COMBINED MOTION TO DISMISS
### WITH INCORPORATED MEMORANDUM OF LAW

Defendants, Tassels, Inc. ("Tassels") and Tracy W. Mayo, respectfully move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), to dismiss the Complaint, DE 1, for lack of personal jurisdiction and improper venue. Defendants are both residents of North Carolina without jurisdictional contacts with Florida and Ms. Mayo is protected by the corporate shield doctrine. Defendants file herewith the Declaration of Tracy Mayo and further state:[1]

## I.    INTRODUCTION

Plaintiff is suing Defendants for copyright infringement of her alleged works, which she claims Defendants sold via the online retailer "The Mainstreet Collection." Putting aside the lack of merit to her case, Plaintiff sued the wrong

---

[1] The 3-page Declaration is inadvertently in 12-point font.

parties. This case also should not be in *this* Court because Defendants have not and do not reside or do business in Florida. The Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction or transfer venue to the U.S. District Court for the Eastern District of North Carolina.

## II. BACKGROUND

Tassels is a North Carolina corporation. Declaration of Tracy Mayo, "Decl." at ¶ 1. It operates out of a warehouse in Washington, North Carolina. *Id.* at ¶ 3. Tassels conducts "foot traffic" transactions with customers who visit the warehouse and decide to purchase supplies stored there. *Id.* Tassels conducts these warehouse sales once or twice a year, and these sales are only to buyers present at the warehouse in North Carolina. *Id.* Tassels does not ship product to customers. *Id.*

Since Tassels only conducts transactions from in-person customers at its warehouse in North Carolina, it does not conduct business in or directed to Florida. *Id.* at ¶ 5. Tassels does not own any real or personal property in Florida. *Id.* It does not have an office or telephone number in Florida and does not target Florida for marketing or advertising. *Id.* Tassels does not have plans to expand into Florida or to solicit business from Floridians. *See id.*

It is true that Plaintiff and Tassels entered into a contract in 2005 which granted Tassels a license to sell Plaintiff's works in exchange for royalties. *Id.* at ¶ 4. Nonetheless, Tassels has not sold into Florida any of the works at issue in Plaintiff's

Complaint. *See id.* at ¶ 6. Any alleged sales of Plaintiff's works would have been made by an entity, Mainstreet Collection Online, that is not Tassels. *See id.* at ¶ 10. In other words, Plaintiff incorrectly identifies Tassels with Mainstreet Collection Online, which is the only entity that operates the implicated www.mainstreetcollectiononline.com website. *See* DE 1 ¶ 7; Decl. ¶ 8.

Ms. Mayo is president and officer of Tassels. *Id.* at ¶ 1. She does not have any personal contacts with Florida and she does not regularly travel to this state. *Id.* at ¶ 7. Ms. Mayo is a resident of North Carolina. *Id.* at ¶ 1. She operates Tassels, Inc. as well as non-parties Mainstreet Collection Online, Inc. and The Mainstreet Collection, Inc., all of which are North Carolina entities located exclusively in North Carolina. *See id.* at ¶¶ 1, 8, 11, 12.

Upon investigation, Defendants estimate that Mainstreet Collection Online, the only entity that sold allegedly infringing products into Florida, sold just eight of them in Florida since 2023. *See id.* at ¶ 10. That entity has not made any sales of the accused items in Florida since then. *Id.*

Further, other than occasional retail purchase requests, Mainstreet Collection Online does not conduct business in or directed to Florida. *Id.* at ¶ 11. It does not own any property, real or personal, in Florida. Mainstreet Collection Online does not have a Florida office or telephone number and does not target Florida for its

marketing or advertising activities. *Id.* Mainstreet Collection Online does not intend to expand into Florida. *Id.*

## III. LEGAL STANDARD

### A. Personal Jurisdiction – Generally

"The plaintiff bears the initial burden of alleging sufficient facts in the complaint to make a prima facie case for personal jurisdiction over a nonresident defendant." *Smith v. Poly Expert, Inc.*, 186 F. Supp. 3d 1297, 1298 (N.D. Fla. 2016) (citing *Meier ex rel. Meier v. Sun Intern. Hotels, Inc.*, 288 F.3d 1264, 1268–69 (11th Cir.2002)). When the defendant contests personal jurisdiction under Rule 12(b)(2) and submits affidavits or other evidence in support of its motion to dismiss, "the burden shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.*

Determining whether personal jurisdiction can be exercised over a non-resident defendant involves a two-part inquiry. *Id.* (citing *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir.2007)). First, the court considers the jurisdictional question under the relevant state long-arm statute. *Id.* If the court finds a basis for the assertion of long-arm personal jurisdiction, the court will next determine whether the defendant has sufficient minimum contacts to satisfy the Due Process Clause of the Fourteenth Amendment and whether the exercise of jurisdiction offends "traditional notions of fair play and substantial justice." *Id.*

## IV. ARGUMENT

This Court lacks personal jurisdiction because Defendants do minimal business, if any, in Florida and Tassels has made no sales of the allegedly infringing products into Florida. The Eastern District of North Carolina has personal jurisdiction over Defendants, and it would be an adequate venue for this case. This Court should either dismiss this case or transfer venue.

### A. No General Jurisdiction

To begin with, Plaintiff does not identify any provision of Florida's long-arm statute under which it claims Defendants are subject to personal jurisdiction. Instead, Plaintiff alleges, summarily and without supporting facts:

> Defendants are subject to personal jurisdiction in Florida because Defendants have made numerous sales into Florida and have purposefully availed themselves of the privilege of conducting business within Florida. Further, some of the sales made by Defendants in Florida included the actual infringing materials giving rise to this case. Finally, the acts in question were intentional acts directed toward a specific individual in this forum (HARRELL) and the harm was suffered in this forum.

DE 1 ¶ 12. As explained below, these allegations are factually incorrect and thus there is no basis for personal jurisdiction. We start with general jurisdiction under Fla. Stat. § 48.193(2).

"A defendant who is engaged in substantial and not isolated activity within the state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that

5

activity." Fla. Stat. § 48.193(2). Where general jurisdiction is established, "a defendant's contacts with the forum state 'justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Poly Expert,* 186 F. Supp. 3d at 1300 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

A corporate defendant with near minimal dealings and operations in Florida does not have the requisite activity to satisfy general jurisdiction. *See Crowe v. Paragon Relocation Resources, Inc.*, 506 F. Supp. 2d 1113, 1123 (N.D. Fla. 2007). In *Crowe*, the court declined to exercise general jurisdiction where a defendant did not have an office, subsidiaries, agents, employees, property, telephone number, or bank account in Florida, was not registered to do business in Florida, and did not direct any media advertising into Florida. *Id*. at 1123. Even though the defendant in *Crowe* generated 2.7% of its total yearly revenue from Florida dealings, this was not enough to find general jurisdiction. *Id.* at 1124.

This case makes an even better case than *Crowe* for lack of personal jurisdiction. Like the defendant in *Crowe*, Tassels has no Florida office, property,

6

telephone number, marketing, or other connection to Florida. *See* Mayo Decl. ¶ 5. Further, Tassels does not conduct any business in Florida, nor does it plan to. *Id.* And if, as in *Crowe*, minimal revenue generated from Florida dealings was insufficient to allow the court to find general jurisdiction, no revenue, as is the case here, must also be insufficient. *See* Decl. ¶ 5.

Additionally, Ms. Mayo does not reside in Florida so she cannot be subject to general jurisdiction. *See id.* at ¶ 1. The Court therefore does not have general jurisdiction over either of these Defendants.

### B. No Specific Jurisdiction

Plaintiff also claims "some of the sales made by Defendants in Florida included the actual infringing materials giving rise to this case" and "the harm was suffered in this forum." DE 1 ¶ 12. Thus, Plaintiff appears to be alleging that long-arm jurisdiction is appropriate because Defendants "committ[ed] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Copyright infringement is considered tortious activity under the statute. *See Fason v. Queenship Publ'g Co.*, No. 4:06CV483-RH/WCS, 2007 WL 9735377, at *4 (N.D. Fla. June 5, 2007). Nonetheless, the tortious activity must occur within Florida. *See Crowe,* 506 F. Supp. 2d at 1121.

In *Crowe*, the court held that communications into Florida were insufficient to establish specific jurisdiction because they were not the basis for the plaintiff's

age discrimination claim. *Id.* Likewise, here, even assuming Defendants made some sales into Florida (they did not), none of those sales consisted of the alleged infringing works at issue. *See* Mayo Decl. ¶ 6. Plaintiff's Complaint assumes the online retail website www.mainstreetcollectiononline.com belongs to Tassels, but it does not. *Id.* at ¶ 8; *see* DE 1 ¶ 7. Any of Tassels' sales allegedly infringing on Plaintiff's copyrights occurred wholly in North Carolina where it has its warehouse, and this fails to provide a basis for personal jurisdiction under § 48.193(1)(a)(2).

Plaintiff's second basis for specific jurisdiction is that Defendants' acts were intentional and she suffered harm in this forum. DE 1 ¶ 12. Under recent legal precedent, that argument fails.

Specifically, in *Wholesale Direct 2 You v. Switchmate Home, LLC*, No. 23-62273, 2024 WL 3757274 (S.D. Fla. June 12, 2024), a Florida plaintiff sued a California defendant for various torts, including declaratory judgment of non-infringement of trademark, tortious interference with advantageous business relationship, and defamation arising from "fraudulent[] represent[ations] to Amazon," which suspended the plaintiff's storefront as a result of the defendant's complaint. *Id*. at *1-2. The court declined to exercise jurisdiction under the tortious act prong of the long arm statute, reasoning:

> Plaintiff argues that Defendant made false statements to Amazon that caused Plaintiff harm in Florida. It is true that one can commit a tortious act in Florida under the long-arm statute "through the non-resident defendant's

> telephonic, electronic, or written communications into Florida provided that the cause of action arose from those communications." …. The Amended Complaint does not allege, however, that any of the false statements by Defendant that form the basis of Plaintiff's claims were made, directed, or received in Florida. **Standing alone, "the fact of loss to a Florida resident caused by conduct outside the state is insufficient to impose jurisdiction**[.]"

*Id*. at *7 (emphasis added; citing, *inter alia*, *Harris v. Shuttleworth & Ingersoll, P.C.*, 831 So. 2d 706, 708 (Fla 4th DCA 2002) ("If the Legislature intended for this provision to encompass all tortious acts which were complete outside Florida but ultimately have consequences here only because a Florida resident suffers damages, we believe it would be incumbent on the Legislature to make that statutory purpose clear in the plainest of language."); *Blumberg v. Steve Weiss & Co., Inc*., 922 So. 2d 361, 364 (Fla. 3d DCA 2006) (explaining "it is not … enough that the actions of a defendant committed outside of Florida ultimately have consequences in Florida" and holding specific jurisdiction must be based on defendant directly causing injury in Florida)). *See also Justiniano v. Chapter 4 Corp*., No. 6:21-cv-875, 2021 WL 6338791, at *8 (M.D. Fla. Dec. 23, 2021) (the proper question is not whether Plaintiffs experienced injury in Florida but whether Defendants' conduct connects them to Florida in a meaningful way. Here, the only connection to Florida is that Defendants allegedly knew that their communications (apparently made from

Canada) to Plaintiffs' customers (which are also not located in Florida) would injure Plaintiffs in Florida. That is not enough…..").

In this case, Defendants did not sell any of the accused products in Florida or to Florida residents. Whether or not Plaintiff suffered harm in Florida, Defendants out-of-state activities do not give rise to personal jurisdiction under the tortious act subsection of the longarm statute.[2]

Further, there still must be a causal connection between a defendant's Florida activities and any harm. *See Crowe*, 506 F. Supp. 2d at 1122 (holding no causal connection between activities in Florida and acts forming basis for lawsuit). Here, there are no activities attributed to Defendants that occurred in Florida that give rise to Plaintiff's alleged injury from copyright infringement. *See* Mayo Decl. ¶ 6.

## C.     Failure of Due Process

Even if a plaintiff satisfies the forum-state's longarm statute, due process must still be satisfied for a court to exercise personal jurisdiction. *See Smith*, 186 F. Supp. 3d at 1300. The two main issues when evaluating due process are "minimum contacts and fundamental fairness." *Fason*, 2007 WL 9735377, at *5. Minimum contacts require that the defendant's contacts with the forum:

> (1) are related to the plaintiff's cause of action or have given rise to it, (2) involve some act by which the

---

[2] Although not alleged, § 48.193(1)(a)(6) is not a basis for personal jurisdiction based on copyright infringement. *See Affordable Aerial Photography, Inc. v. Core Development Group* LLC, 2024 WL 2815263, at *1 n.1 (S.D. Fla. May 6, 2024).

> defendant has purposefully availed itself of the privilege of conducting activities in the forum, and (3) are such that the defendant can reasonably anticipate being haled into court in the forum.

*Id.*

If a court finds there are sufficient minimum contacts, the court looks to "whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice" considering factors like "burden on the defendant, . . . the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Where a plaintiff has not established jurisdiction under the long-arm statute, courts often forego the due process analysis. *See Nature Coast Dev. Grp., LLC v. U.S. Specialty Ins. Co.*, No. 1:21-CV-74-AW-HTC, 2022 WL 11589413, at *3 (N.D. Fla. Sept. 2, 2022) (where a "court lacks personal jurisdiction under Florida's longarm statute, [it need not address the] federal due process dimension of personal jurisdiction," citing *Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 558 (Fla. 2d DCA 2017)). In any event, the failure of due process in this case is evident from Defendants' lack of jurisdiction under the longarm statute, discussed above. Tassels has not done business in Florida, has no jurisdictional ties to Florida,

and has not sold allegedly infringing items in Florida. *See* Mayo Decl. ¶¶ 5-6. Even if Tassels had contacts with Florida, they are unrelated to this action and insufficient to establish due process.

**D.      Defendant Mayo is Protected by the Corporate Shield Doctrine**

The corporate shield doctrine provides that "a nonresident employee-defendant who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida will not be subject to the personal jurisdiction of Florida courts simply because he or she is a corporate officer or employee." *Frida Kahlo Corp. v. Pinedo*, No. 1:22-CV-22399, 2023 WL 9473827 at *5 (S.D. Fla. Dec. 28, 2023) (citing *Kitroser v. Hurt*, 85 So. 3d 1084, 1089 (Fla. 2012)); *see Doe v. Thompson,* 620 So. 2d 1004, 1006 (Fla. 1993). This is because "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Frida Kahlo,* 2023 WL 9473827 at *5 (citing *Doe,* 620 So. 2d at 1006).

Nonetheless, a plaintiff must allege a cause of action involving intentional conduct against an individual defendant to overcome the corporate shield doctrine. *See Nature Coast*, 2022 WL 11589413 at *2 (quoting *Silver v. Levinson*, 648 So. 2d 240, 241 (Fla. 4th DCA 1994)) ("[B]ecause the threshold question of personal jurisdiction turns on whether defendant committed an intentional tort in Florida, we

must also necessarily review the complaint to determine whether it states a cause of action for libel.").

In *Nature Coast*, the plaintiff sued an entity defendant for breach of contract, along with several company executives. *Id*. at \*1. The plaintiff alleged the company executives committed civil theft, which brought them under Fla. Stat. § 48.193(1)(a)(2) for committing an intentional tort in Florida. *Id*. at \*2. After finding the complaint did not adequately plead civil theft, the court found it lacked personal jurisdiction over the individual defendant because no cause of action adequately alleged an intentional tort. *Id*. at 3.

Further, while intentional misconduct by an individual defendant may constitute an exception to the corporate shield doctrine, "Florida courts require that the intentional tort be committed for the corporate officer's personal benefit." *Frida Kahlo,* at \*5 (citing *VIS Holdings Corp. v. Cooper*, No. 07-20882, 2007 WL 9702900 at \*6 (S.D. Fla. Dec. 11, 2007); *Smith v. Panera Bread*, No. 08-60697, 2009 WL 10667191 at \*8 ("[M]ere allegations of intentional misconduct on behalf of the employer ... without more are not enough to avoid the corporate shield doctrine.")).

A few examples illustrate these points. In *Frida Kahlo, supra*, the plaintiff sued an individual claiming she committed tortious acts within Florida by sending plaintiffs' licensees, including a Florida-based licensee, cease and desist letters misrepresenting that she is the rightful owner of the subject name and image. 2023

WL 9473827 at *4. Because "the letters were sent in her capacity as an officer of …

and for the benefit of" the company, and "not herself," the individual defendant was

protected by the corporate shield doctrine. *Id*. at *5. Even if the corporate officer

"did commit an intentional tort," the plaintiffs did "not allege that [she] gained any

pecuniary or personal benefit from sending the cease and desist letters." *Id*. The court

therefore dismissed the complaint for lack of personal jurisdiction over the corporate

officer.

Similarly, in *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, No. 1:13-

cv-21297, 2014 WL 11880964 (S.D. Fla. Jan. 24, 2014), a defendant asserted a

declaratory judgment counterclaim against a Swiss watch manufacturer and its

corporate officer. Applying the corporate shield doctrine, the court reasoned:

> Clearly, the Counter-Plaintiffs' basis for personal jurisdiction over Mr.
> Carrion on the facts alleged is via his role as a corporate officer at
> Buccellati Watches. Mr. Carrion is not engaging in business in the state
> under § 48.193(1)(a)(1), committing tortious acts within the state
> under § 48.193(1)(a)(2), or doing business in Florida under §
> 48.193(2), in his personal capacity. The corporate shield doctrine
> provides that "acts performed by a person exclusively in his corporate
> capacity not in Florida but in a foreign state may not form the predicate
> for the exercise of personal jurisdiction over the employee in the forum
> state." …. Thus, Mr. Carrion falls within the purview of the corporate
> shield doctrine.

*Id*. at *5 (citing *Kitroser, supra; Carter v. Estate of Rambo*, 925 So. 2d 353, 356 (Fla.

Dist. Ct. App. 2006) ("The corporate shield doctrine draws a distinction between a

corporate officer acting on his own and a corporate officer acting on behalf of his

corporation. Under the corporate shield doctrine, any activity in one's capacity as a corporate officer or director is exempted from consideration in support of the exercise of long-arm jurisdiction over said officer or director.")).

The court in *Buccellati*, just like the court in *Frida Kahlo*, rejected the counter-plaintiffs' argument that the corporate officer was excepted from the corporate shield doctrine because he committed fraud. The court reasoned that the counter-plaintiffs had "not set out any specific acts Mr. Carrion has personally committed outside his corporate capacity that would amount to fraud or intentional misconduct." *Id*. at *6. Thus, the corporate officer was protected by the corporate shield doctrine and there was no personal jurisdiction over him under Florida's long-arm statute. *Id*.

And in *Litke,* the only allegations against the individual defendant were that he was President and/or CEO of his company. 2024 WL 4373634 at *7. There were no allegations that the defendant "worked in Florida, committed any action in Florida, or had any personal connection to Florida." *Id*. The court stated that an individual "will not be subject to the personal jurisdiction of Florida courts simply because he … is a corporate officer …." *Id*. (citing *Kitroser*, 85 So. 3d at 1089). Reasoning that "the Florida long-arm statute requires a corporate officer have some connection to Florida to be subject to personal jurisdiction here" and that no such connection was alleged, the court dismissed the complaint for lack of personal jurisdiction. *Id*.

In the recent case of *BFL Metal Products Co. Ltd. v. RDFN FUM Natural Products, Ltd.*, No. 24-cv-22267, 2025 WL 958250 at *4 (S.D. Fla. Mar. 31, 2025), the court explained:

> Although "under Florida law, [the] corporate shield doctrine is inapplicable where the corporate officer commits intentional torts[,]" Plaintiff still must allege specific acts that would constitute an intentional tort on the part of the [corporate officers] in order to establish personal jurisdiction. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802 (11th Cir. 2010)….

The court found that the plaintiff's allegations specific to the corporate officers "relate to their affiliation with" their company, "which is insufficient to establish that they, as individuals, committed an intentional tort, even if [their company] may have committed trademark infringement." *Id*. at *5 (citing *LaFreniere v. Craig-Myers*, 264 So. 3d 232, 239 (Fla. 1st DCA 2018) ("In each of [the] cases where jurisdiction was found, the plaintiff produced evidence of the specific conduct on the part of the corporate officer that constituted a fraud or intentional tort. In each case, the nonresident corporate officer personally and intentionally engaged in the tortious conduct[.]")). In short, "[a]n individual cannot be held responsible for trademark infringement solely by virtue of the fact that they are a corporate officer for a company that committed trademark infringement." *Id*.

As a preliminary matter, Plaintiff's Complaint lacks an intentional tort against Ms. Mayo. While Plaintiff pleads vicarious infringement against Ms. Mayo, *see* DE

16

¶¶ 179-189, vicarious infringement is not an intentional tort. Vicarious liability requires "a direct financial benefit from the direct infringement" and "the right and ability to supervise a party responsible for direct infringement." *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *10 (S.D. Fla. Sept. 14, 2022). Thus, Plaintiff has not alleged an intentionally tortious act against Ms. Mayo.

The allegations against Ms. Mayo likewise "relate to [her] affiliation" with Tassels. *See BFL Metal Products, supra.* For example, Plaintiff alleges that Ms. Mayo "is the main creative decision maker for *Tassels* and took the actions that form the basis of the infringement contentions" against Tassels. DE 1 ¶ 9 (emphasis added). All the allegations of infringement in the Complaint are accordingly directed to activities by Tassels. *See, e.g.*, ¶¶ 23, 27, 31, 35 (Tassels reproduced and sold….); 183 ("Tassels has directly infringed….").

True, Plaintiff asserts that Ms. Mayo was "personally involved with the acts of infringement." DE 1 ¶ 184. But being "personally involved" does not equate to committing an intentional tort, let alone one "committed for the corporate officer's personal benefit." *Frida Kahlo, supra*; *Buccellati*, *supra*. And other than this blanket conclusion, Plaintiff fails to plausibly plead, under *Twombly* and *Iqbal* standards, sufficient facts that Ms. Mayo was "personally involved."

Moreover, even assuming, *arguendo*, Plaintiff alleged that Ms. Mayo committed acts constituting an intentional tort, there are no allegations that those acts were conducted in Florida. *See Frida Kahlo* (explaining that corporate shield doctrine provides that "a nonresident employee-defendant who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida will not be subject to the personal jurisdiction of Florida courts simply because he or she is a corporate officer or employee"). To the contrary, Ms. Mayo has never worked in Florida and never engaged in any corporate activities in Florida that would subject her to personal jurisdiction. Decl., ¶ 7.

In ¶ 12, Plaintiff attributes a myriad of activities to "Defendants." But "[b]y merging the allegations against [Tassels] with those regarding [Ms. Mayo], the Complaint insufficiently alleges those actions taken by [Ms. Mayo] constitute the intentional tort of" copyright infringement. *BFL Metal Products,* 2025 WL 958250 at *4.

In short, Plaintiff fails to allege intentional and tortious conduct on Ms. Mayo's behalf or that Ms. Mayo conducted any activities for her own personal, as opposed to Tassels', benefit. Thus, Plaintiff's Complaint fails to overcome Ms. Mayo's protection under the corporate shield doctrine.

### E. Improper Venue

Plaintiff claims venue is proper pursuant to 28 U.S.C. § 1400(a). Copyright suits "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The Eleventh Circuit construes "may be found" to mean "a district which may assert personal jurisdiction over the defendant." *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004) (citation omitted). Here, neither Defendants nor their agents reside or may be found in Florida. *See* Mayo Decl. ¶ 5. Both Defendants are North Carolina residents over which the Court lacks personal jurisdiction. Therefore, Plaintiff has not alleged a sufficient basis for venue.

The Eastern District of North Carolina, where Defendants reside, is however a proper venue for this case. This Court has authority to transfer venue there. *See* 28 U.S.C. § 1406(a).

## V. CONCLUSION

The Complaint fails to allege a ground for personal jurisdiction over these Defendants and Ms. Mayo is protected by the corporate shield doctrine. The Complaint should either be dismissed under Rules 12(b)(2) and/or (3) or transferred to the Eastern District of North Carolina.

WHEREFORE, Defendants, Tassels, Inc. and Tracy Mayo, respectfully request that the Court dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(2) and (3) or transfer venue to the U.S. District Court for the Eastern

District of North Carolina, and for such other and further relief as the Court deems appropriate.

## Certification of Word Limit

In accordance with Local Rule 7.1(F), I hereby certify that the foregoing consists of 4,450 words based on the word-processing system employed and not including case style, signature block, and certificate of service.

Dated: August 26, 2025                    Respectfully submitted,

By: */s/ Matthew S. Nelles*
Matthew S. Nelles
Florida Bar No.: 009245
matt.nelles@johnsonmartinlaw.com
Johnson & Martin, P.A.
500 West Cypress Creek Rd.,
Suite 430 Ft. Lauderdale, FL
33309
T: (954) 790-6698
Eservice: sari.tannenbaum@johnsonmartinlaw.com

*Attorneys for Defendants Tassels, Inc. and Tracy Mayo*

## Certificate of Service

I HEREBY CERTIFY that on August 26, 2025, I electronically filed the foregoing with the Clerk of Courts by using the CM/ECF which will serve a copy of the foregoing document on all counsel of record on the below Service List.

## <u>SERVICE LIST</u>

J. Wiley Horton, Esq.
wiley@penningtonlaw.com
PENNINGTON, P.A.
215 S. Monroe Street, 2nd Floor
Tallahassee, FL  32301
850 222-3533 – office
850 222-2126 – fax

*Counsel for Plaintiff*